**MAINE ASSOCIATION OF INTERDEPENDENT NEIGHBORHOODS, et al., Plaintiffs,**

**v.**

**Michael PETIT, et al., Defendants.**

**Nancy HAGGAN, Plaintiff,**

**v.**

**Michael PETIT, Defendant,**

**v.**

**Otis R. BOWEN, Third-Party Defendant.**

**Civ. Nos. 83–0360–B, 85–0174–B.**

United States District Court, D. Maine.

Nov. 6, 1986.

Linda Christ, Jack Comart, Pine Tree Legal Assistance, Inc., Augusta, Me., Peter Darvin, Pine Tree Legal Assistance, Inc., Portland, Me., for plaintiffs.

Marina E. Thibeau, Carmen L. Coulombe, Dept. of Human Services, Legal Div., Augusta, Me., for defendant Petit.

Lawrence E. Burstein, Asst. Regional Atty., Dept. of Health and Human Services, Boston, Mass., David R. Collins, Asst. U.S. Atty., Portland, Me., for defendant Bowen.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

GENE CARTER, District Judge.

These cases are before the Court on Plaintiff Haggan's motion for a temporary restraining order or preliminary injunction requiring Defendants Petit and Bowen to compute Plaintiff's Medicaid eligibility from June 1, 1986 without regard to the "$6,000/6%" rule for determining what property is essential to a claimant's means of self-support. For the reasons stated herein, the Court will issue the requested preliminary injunction.

### I. *Factual and Legal Background*

At issue is a rule used by Defendant Bowen, Secretary of the United States Department of Health and Human Services (HHS), and Defendant Petit, Commissioner of the Maine Department of Human Services (DHS), to calculate eligibility for Medicaid benefits under title XIX of the Social Security Act, 42 U.S.C. § 1396a (1982). The rule is currently set out at 42 C.F.R. §§ 416.1220–.1224 (1985). For present purposes, it is enough to say that the rule is used to determine whether a claimant falls within the category of "SSI-related medically needy," potentially eligible for Medicaid under sections 1396a(a)(17) and 1396a(a)(10)(C)(i)(III). In order to be eligible under this category, a claimant must in turn meet certain SSI financial criteria set forth at 42 U.S.C. §§ 1382a, 1382b (1982). In determining whether a claimant meets these criteria, the Commissioner of DHS may not consider "property which, as determined in accordance with and subject to the limitations prescribed by the Secretary [of HHS], is so essential to the means of self-support of such individual (and such spouse) as to warrant its exclusion." 42 U.S.C. § 1382b(a)(3) (1982). The rule here at issue excludes business

and nonbusiness property as "essential to the means of self-support" only where the claimant's (or spouse's) equity in the property is $6,000 or less *and* the annual net income from the property is at least 6% of the equity value.

Plaintiff Nancy Haggan suffers from multiple sclerosis; she lives with her husband, Clifford Haggan, and their son at their home, where she is bedridden and requires 24–hour nursing care. In 1983, DHS determined that Mrs. Haggan was eligible for Medicaid as an "SSI-related medically needy" individual, but in 1984 her Medicaid coverage was terminated because her husband owned certain logging equipment worth more than $6,000. Mrs. Haggan submitted a new application for Medicaid coverage in December of 1984, which was denied, again due (as the parties have now stipulated) to Mr. Haggan's ownership of property that did not satisfy the $6000/6% rule.

Plaintiff Haggan brought an action challenging this decision, which action was consolidated with an action brought by Plaintiff Maine Association of Interdependent Neighborhoods, seeking to invalidate the $6000/6% rule as well as other Medicaid rules. Plaintiffs in both actions allege procedural violations of the Administrative Procedure Act, 5 U.S.C. §§ 551–706 (1982), and violations of certain moratorium provisions of section 2373(c) of the Deficit Reduction Act, Pub.L. 98–369 (1984), the Social Security Act, 42 U.S.C. § 1382b(a)(3) (1982), and the reasonableness requirement of the Administrative Procedure Act, 5 U.S.C. § 706 (1982).

Plaintiff Haggan filed a motion for a temporary restraining order or preliminary injunction on September 3, 1986, seeking an order requiring Defendants to compute her Medicaid eligibility without regard to the $6000/6% rule. As grounds for this motion, she submitted affidavits to the effect that her mother, who had been providing her with about $600 per month to help with expenses, would no longer be able to provide that support to the household; as a result, unless she could establish her eligi-

bility for Medicaid, she would be forced to enter a nursing home. Her doctor stated in an affidavit that the effect of such a move on her physical and mental health would be "devastating," and her husband's affidavit and her own statement echoed these predictions.

## II. *Injunctive Relief*

In order to prevail on her motion for a preliminary injunction, Plaintiff Haggan must satisfy four criteria:

"(1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which the granting of injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction."

*Stanton by Stanton v. Brunswick School Dept.*, 577 F.Supp. 1560, 1567 (D.Me.1984) (*quoting UV Industries, Inc. v. Posner*, 466 F.Supp. 1251, 1255 (D.Me.1979) (Gignoux, J.)). The Court below considers each of these criteria.

### A. *Plaintiff's Irreparable Injury*

Plaintiff Haggan asserts, with supporting affidavits, that absent the requested injunction she will be forced to leave her family and enter a nursing home, irreparably injuring her physical and mental health. The wrongful denial of governmental benefits may constitute irreparable injury, *see Coalition for Basic Human Needs v. King*, 654 F.2d 838, 840–41 (1st Cir.1981), particularly where, as here, the denial results in a disruption of the family unit and a consequent threat to the health of the claimant.

Defendant Bowen asserts that Plaintiff is not at risk of irreparable injury because she is eligible for assistance under Maine's Catastrophic Illness Program, set forth in Chapter IV, Section C of the Maine Public Assistance Payment Manual. However, it appears that this program does not reimburse eligible individuals for the costs of home nursing care, whereas Medicaid would cover such costs. Mr. Haggan's af-

fidavit states that Plaintiff's home nursing care costs $560 per week—by far the largest medical expense Plaintiff incurs. The Court is therefore satisfied, on the record on this motion, that Plaintiff's eligibility for Maine's Catastrophic Illness Program does not negate the risk of irreparable injury.

■ The Court is somewhat more troubled by allegations in Defendants' memoranda that Plaintiff would be ineligible for Medicaid, even absent the use of the $6000/6% rule, because of the Haggans' control of certain bank accounts and life insurance policies whose value exceeds Medicaid guidelines. If this were true, Plaintiff has not shown that she will be irreparably injured absent the requested relief. But all this information was available at the time Plaintiff's last application was finally denied on March 18, 1985, and all parties have since stipulated that "Nancy Haggan's application for Medicaid benefits was denied due to the application of the '$6000/6%' rule." Stipulated Record at 5. Moreover, Defendant Bowen raises the bank account and insurance policy issue only to support the proposition that no case or controversy exists between him and Defendant Petit; neither Defendant presses the argument as a ground for denying the requested preliminary injunction. Because this Court is not itself in a position to recalculate Plaintiff's Medicaid eligibility, and because Defendants do not press the argument or present any calculations themselves, the Court concludes that Plaintiff has met her burden on the issue of irreparable injury.

### B. *Balancing the Harms to Plaintiff and Defendants*

■ Plaintiff asserts that there is little risk of harm to Defendants because any payment to Plaintiff of Medicaid benefits later found to have been erroneous may be recovered pursuant to 42 U.S.C. § 1396p(a)(1)(A) (1982). Neither Defendant asserts that he would be harmed in any way by the issuance of the requested preliminary injunction. And this is not a case involving any threat to the orderly development of administrative policies or regulations. *Cf. McDonough v. United States Department of Labor,* 646 F.Supp. 478, 482 (D.Me.1986) (denying plaintiffs' request to enjoin administrative proceeding that might result in termination of plaintiffs' benefits). The Court concludes that whatever minimal risk of harm to Defendants may exist is substantially outweighed by the risk of harm to Plaintiff Haggan.

### C. *Likelihood of Plaintiff's Success on the Merits*

Because Plaintiff Haggan has requested that Defendants be enjoined from computing her Medicaid eligibility "from June 1, 1986" using the $6000/6% rule, the relief she requests is essentially prospective in nature. That is, she here seeks not a recomputation of her past eligibility, but rather, a computation of her eligibility for the current (June 1, 1986 through November 30, 1986) and future six-months eligibility periods. The Court therefore need not reach Defendant Bowen's argument that sovereign immunity shields him from any order for retroactive relief. The Court has reviewed Plaintiff's procedural and substantive challenges to the $6000/6% rule and both Defendants' responses thereto, and the Court concludes that on her claim for prospective relief, Plaintiff has shown a strong likelihood of success on the merits against both Defendants. The Court will address in turn Plaintiff's challenges to the rule at the federal and state levels.

#### 1. *Plaintiff's Challenge to the Federal Rule*

Plaintiff's case on the merits begins with the assertion that, at least before October 22, 1985, Defendant Bowen's adoption and use of the $6000/6% rule did not comply with the Administrative Procedure Act. Neither Defendant contests Plaintiff's assertion that the rule should originally have been, but was not, adopted through the notice and comment requirements of 5 U.S.C. § 553 (1982), made applicable to HHS by order of the Secretary at 36 Fed.

Reg. 2532 (Jan. 28, 1971). Nor do Defendants dispute that the two publications of the rule in proposed form by themselves did not satisfy the requirement of the APA. *See* 40 Fed.Reg. 12516 (March 19, 1975); 47 Fed.Reg. 50511 (Nov. 8, 1982). (A final rule published on October 22, 1975, and apparently legally in force until at least October 22, 1985, "inadvertently" failed to include the $6000/6% limitation. *See* Stipulated Record at 215; 40 Fed.Reg. 48916 (Oct. 20, 1975).) Plaintiff is thus likely to succeed on these arguments.

■ Defendants do claim, however, that the rule was properly adopted through notice and comment procedures and made effective upon publication in the *Federal Register* on October 22, 1985. *See* 50 Fed. Reg. 42685 (Oct. 22, 1985). Plaintiff responds that Defendant Bowen's failure to delay implementation of the rule until 30 days after its publication, without good cause for such failure, violated 5 U.S.C. § 553(d) (1982). Based on this asserted violation, Plaintiff requests this Court to void the rule completely. But Plaintiff has not cited any case imposing such a drastic remedy; most courts confronting such violations merely add 30 days, and one court has added 49 days, to the effective date of the rule in question. *See Ngou v. Schweiker,* 535 F.Supp. 1214, 1217 (D.D.C.1982) (adding 49 days onto rule's publication date). This Court would not be inclined completely to invalidate the rule based on a section 553(d) violation and thus need not decide, on this motion, whether any such violation occurred in this case.

■ Assuming, then, that the rule was procedurally invalid at the federal level at least until October 22, 1985, the Court must now consider whether the rule is valid after that date. Plaintiff argues that Defendant Bowen's adoption of the rule on that date was arbitrary and capricious, an abuse of discretion, and unreasonable, in violation of the Social Security Act, 42 U.S.C. § 1382b(a)(3) (1982), and the Administrative Procedure Act, 5 U.S.C. § 706 (1982). Defendant Bowen responds that section 1382b(a)(3) delegates to him exceptionally broad discretion to define the property that may be excluded from SSI (and thus "SSI-related medically needy" Medicaid) eligibility calculations.

On this motion, it is necessary to address only the strongest of Plaintiff's arguments: that the $6000/6% rule is based on survey data collected in 1973 or earlier and thus completely fails to account for inflation since that time. Plaintiff argues that according to the Consumer Price Index, the purchasing power of the dollar was 2.41 times higher in 1973 than it is today. Even assuming, without deciding, that the methodology of the 1973 survey was not irrational (a point Plaintiff vigorously disputes), Defendant Bowen's failure to take into account the intervening inflation is plainly irrational. A $6,000 limit in 1973 suggests that a $14,460 limit would be rational today; adhering to the $6,000 limit today is equivalent to imposing a $2,490 limit in 1973.

During the notice and comment procedure leading to the publication of the rule on October 22, 1985, several commenters pointed out that HHS had not taken inflation into account, but Defendant Bowen completely failed to address this point. *See* 50 Fed.Reg. 42685 (Oct. 22, 1985) (recognizing but not responding to the point that the $6000 limit "does not take into account the high inflation since the start of the program"). The parties have stipulated that HHS discussed the question internally but declined to make any adjustment for inflation "in the absence of a legislative mandate and in the context of a climate of fiscal constraint." Stipulated Record at 216. Defendant Bowen here argues that the desirability of fiscal restraint to control inflation, reduce the tax burden on the general public, and control the cost of living to the categorically needy justifies retaining the $6,000 limit arrived at in 1973.

This Court simply cannot agree. Vague references to a congressional mandate to control inflation cannot justify reducing by a factor of 2.41 the equity value of property deemed "essential to the means of self-support" of SSI claimants within the mean-

ing of 42 U.S.C. § 1382b(a)(3) (1982). Even assuming *arguendo* that Defendant Bowen has been delegated, as he claims, "exceptionally broad discretion" in this area, the Court very much doubts whether his discretion reaches this far. The Court therefore concludes that Plaintiff has shown a strong likelihood of success on her challenge to the merits of the federal rule as that challenge relates to her request for prospective relief.

### 2. *Plaintiff's Challenge to the State Rule*

■ Defendant Petit has stipulated that he promulgated the $6000/6% rule at the state level on July 11, 1983, and that he would not have adopted the rule in its present form but for a federal requirement that he do so. Stipulated Record at 2. Plaintiff argues that the state Medicaid rule was invalid when promulgated because it was more restrictive than the federal SSI rule *legally* in force at the time—the SSI property exclusion rule published in 1975 which "inadvertently" failed to include the $6000/6% limitation. *See* Stipulated Record at 215; 40 Fed.Reg. 48916 (Oct. 20, 1975). Defendant Petit appears to concede the general principle that state Medicaid eligibility guidelines that are more restrictive than existing federal SSI guidelines are unenforceable, but he argues that the state $6000/6% rule was in fact no more restrictive than the federal rule *actually* being used at the time, even if that federal rule was invalid on procedural grounds. He asserts that "[f]or Medicaid to be administered otherwise could cause an inconsistent result whereby an applicant could be found ineligible for SSI yet eligible for SSI-related Medicaid, despite federal requirement that the two programs adhere to the same resource guidelines." Defendant Petit's Memorandum of Law at 3.

Whatever the merits of this argument in the context of a claim for retrospective relief, on this motion the Court gives it little weight. If Plaintiff establishes, as appears likely, that the federal rule is arbitrary and capricious in its present form, the applicable standard (until such time as Defendant Bowen properly promulgates new regulations) would then appear to be the "essential to the means of self-support" standard prescribed by the SSI statute, 42 U.S.C. § 1382b(a)(3) (1982). Defendant Petit's $6000/6% rule is more restrictive than this statutory standard and therefore must fall according to the terms of the statute requiring state Medicaid eligibility guidelines to conform to federal SSI eligibility guidelines. *See* 42 U.S.C. § 1396a(a)-(10)(C)(i)(III) (1982).

Defendant Petit also argues that whatever the flaws in the adoption of the federal SSI rule, the state Medicaid rule was valid when promulgated because it was adopted in compliance with the notice and comment provisions of Maine's Administrative Procedure Act, Me.Rev.Stat.Ann. tit. 5, §§ 8052, 8053 (Supp.1986). But this Court very much doubts whether a federal rule to which a state is required to adhere may effectively be insulated from attack through the expedient of the state's adopting the rule in technical compliance with its own APA. Defendant Petit has stipulated that he would not have promulgated the state rule in its present form but for the federal requirement that he do so. On this motion, however, the Court need not decide that question. In this case, Plaintiff is likely to show that Defendant Bowen failed to adequately consider the effects of inflation in adopting and enforcing the federal $6000/6% SSI rule. Once Plaintiff makes such a showing, the state Medicaid rule must fall, at least prospectively, according to the terms of 42 U.S.C. § 1396a(a)(10)(C)(i)(III) (1982).

The Court concludes that Plaintiff has shown a strong likelihood of success on the merits of her challenge to the state rule as that challenge relates to her request for prospective relief.

### D. *The Public Interest*

■ The Court views the requested injunction as presenting little risk of harm to the public interest. As noted above, Defendants may seek restitution of any benefits later determined to have been errone-

ously paid, and there is little potential for interference with orderly administrative processes. Plaintiff correctly points out that granting the injunction would further the public interest, recognized by the Medicaid program, in encouraging home-based care where feasible. *See* 42 C.F.R. §§ 441.300–.310 (1985). The Court concludes that, to the limited extent the public interest is implicated on this motion, it will be served by the issuance of the requested injunction.

### III. *Rule 65(c)'s Security Requirement*

■ Plaintiff Haggan seeks a waiver of Fed.R.Civ.P. 65(c)'s security requirement, on the ground that she is unable to afford giving security. Defendant Bowen opposes the request absent disclosure by Mr. Haggan of the full extent of his assets. This concern grows primarily out of Mr. Haggan's apparent ownership of a 150–acre woodlot in Rangeley, Maine, a fact which may not have been disclosed to state Medicaid officials until sometime in 1985. Defendant Bowen also points to the absence of any information in the record as to how long Mr. Haggan has been drawing $600 per week from his lumbering business and paying $560 per week for home nursing care for Plaintiff.

■ The Court notes these concerns but concludes that a waiver of the security requirement is nevertheless appropriate. Defendant Bowen does not allege any bad faith or actual concealment on Mr. Haggan's part. More important, the Court may waive the security requirement where the party seeking injunctive relief has shown an extraordinarily high likelihood of success on the merits. *See In re Kingsley*, 802 F.2d 571, 578 (1st Cir.1986). This case is to be decided on a stipulated record, which the Court has before it and has reviewed. In the Court's judgment, Plaintiff Haggan's strong case on the merits of her claims for prospective relief, combined with the factor that a decision on the merits should be forthcoming in the near future, warrant a waiver of the security requirement. *See generally* 11 C. Wright &

A. Miller, *Federal Practice & Procedure* § 2954 & nn. 75–83 (1973 & Supp.1986) (discussing waiver of security requirement in cases involving impecunious plaintiffs seeking government benefits).

### ORDER

It is therefore *ORDERED* that Defendants Bowen and Petit be, and they are hereby, *ENJOINED*, pending a decision on the merits in this case, from computing Plaintiff Haggan's Medicaid eligibility from June 1, 1986 in accordance with the $6,000/6% rule.